**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CLAUDIA B. ESCALANTE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-09-CV-368-KC** |
| | § | |
| **ERIC HOLDER, JR., ATTORNEY** | § | |
| **GENERAL, U.S. DEPARTMENT OF** | § | |
| **JUSTICE,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On this day, the Court considered Defendant's objections to Plaintiff's response to Defendant's proposed undisputed facts ("Objections"), ECF No. 31; Defendant's motion to strike Plaintiff's errata sheet correcting her deposition testimony and motion to strike Plaintiff's declaration and three of her exhibits (collectively, "Motions to Strike"), ECF Nos. 23, 33; and Defendant's motion to dismiss, or in the alternative, motion for summary judgment ("Motion"), ECF No. 21. For the reasons set forth herein, Defendant's Objections are **SUSTAINED** in part, Defendant's Motions to Strike are **DENIED** as moot, and Defendant's Motion is **GRANTED**.

## I.       OBJECTIONS AND MOTIONS TO STRIKE

Defendant has filed objections to Plaintiff's response to Defendant's proposed undisputed facts. Defendant has also filed a motion to strike Plaintiff's errata sheet and a motion to strike Plaintiff's declaration and three of her exhibits. Because it may affect the factual narrative of this case, the Court addresses Defendant's Objections and Motions to Strike before setting forth the factual background.

Defendant objects to nearly all of Plaintiff's responses to Defendant's proposed undisputed facts. *See* Objections 1-40. Upon due consideration, the Court **SUSTAINS** in part these objections to Plaintiff's relevant responses. The sustained objections can be separated into two categories: those in which Plaintiff denies proposed undisputed facts in bad faith, and those in which Plaintiff denies proposed undisputed facts with conclusory allegations supported by no evidence.

Finding that these responses belong in the first category, the Court sustains Defendant's Objections and hereby strikes the following paragraphs of Plaintiff's response: paragraphs 1-2, 9, 15, 20-22, 58, 60, 65, 71, 74-75, 82, 102, 105, 113-14, 135, 191. In these responses, Plaintiff either denies a proposed fact that she herself admits in the same document, denies based on grammatical mistakes, denies based on disagreement with facts other than the proposed fact, or denies for the apparent purpose of confusing the record and attempting to mislead the Court. With respect to these facts, Plaintiff has not demonstrated a material dispute by citing to specific, admissible evidence in the record to dispute Defendant's proposed fact; therefore, Plaintiff's facts are stricken. *See* Fed. R. Civ. P. 56(e)(2).

Furthermore, finding that these responses belong in the second category identified above, the Court strikes the following paragraphs of Plaintiff's response: paragraphs 3-4, 33, 38-40, 45, 57, 64, 72, 76, 141, 144. In these responses, Plaintiff denies Defendant's proposed fact with only conclusory allegations as support. Such responses do not suffice to create a genuine issue of material fact so as to defeat summary judgment. *See United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment."); *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297

(5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."). The Court **OVERRULES AS MOOT** the remainder of Defendant's objections since they do not involve issues necessary to resolve the instant Motion.

With regard to the above-mentioned responses that fail to comport with Federal Rule of Civil Procedure 56(e), the Court considers Defendant's asserted facts corresponding to Plaintiff's deficient responses undisputed for purposes of resolving the Motion. *See* Fed. R. Civ. P. 56(e)(2) (where a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion"). Further, Plaintiff's response to Defendant's Motion contains no citations to specific parts of the record. Because the Court is not required to sift through the record in search of evidence showing disputed issues of material fact, the Court need not consider Defendant's Motions to Strike. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 116 n.9 (5th Cir. 2010) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)), the Court **DENIES AS MOOT** Defendant's Motions to Strike.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.     Background

Unless otherwise noted, the following facts are undisputed. The Bureau of Prisons maintains prisons in La Tuna in Anthony, Texas including a Federal Correctional Institution ("FCI"), Federal Satellite Low ("FSL"), and a prison camp. Def.'s Proposed Undisputed Facts ¶¶ 1-2, ECF No. 20. Facilities are shared, and staff rotate between the FCI and the FSL. *Id.* ¶¶ 3-4. In 1999, Plaintiff began employment as a correctional officer in FCI La Tuna. *Id.* ¶ 7. In 2003,

Plaintiff was promoted to the position of Special Investigative Support (SIS) technician. *Id.* ¶ 9.

Plaintiff received a step increase from GS-8 step 9 to GS-8 step 10 effective June 2007, and

received an incentive award in August 2008. *Id.* ¶¶ 14-15.

Plaintiff complains that in February 2007, her schedule was changed in which her days

off would be Sunday and Monday instead of Saturday and Sunday. *Id.* ¶¶ 20-21. The proposed

schedule change affected all officers within the institution, including both SIS technicians and

correctional officers. *Id.* ¶¶ 23-24. However, the new schedule did not take effect, and as a

result Plaintiff continued her Monday through Friday day-shift work schedule with Saturdays and

Sundays off. *Id.* ¶ 22.

In April 2007, Lieutenant Juan Labrado ("Labrado") was the Special Investigative

Supervisor, which was Plaintiff's first-line supervisor. *Id.* ¶¶ 33-34. According to Labrado, La

Tuna underwent a "staff assist," which precedes a program review and is aimed at identifying

institutional problems. *Id.* ¶ 38. The staff assist identified thirty-one deficiencies, and Labrado

felt that all employees in the SIS unit were responsible for those deficiencies. *Id.* ¶¶ 39-40.

During a meeting held on April 5, 2007, SIS staff were told their schedules would be changed to

allow for coverage of the institution on weekends and evenings in order to address the

deficiencies that had been identified in the staff assist. *Id.* ¶ 45. Plaintiff alleges she told

Labrado during the meeting that she would be unable to work the schedule as proposed because

of childcare issues. *Id.* ¶ 46. Labrado responded that if she could not work the schedule, he

would find someone else who could, that she should find another job, that a secretary position

was open, and that she should apply. *Id.* ¶ 47.

On April 19, 2007, a new schedule was implemented on a month-to-month rotation,

enabling coverage of the institution on evenings and weekends. *Id.* ¶ 56. During the first rotation, Plaintiff was scheduled to work the same schedule as before the new schedule was implemented: Monday through Friday with Saturdays and Sundays off. *Id.* ¶ 57. For a three and one half week period between May 20, 2007, and June 16, 2007, Plaintiff worked weekends and some evenings. *Id.* ¶ 58. Subsequently, Plaintiff spoke to Warden Bragg about childcare issues she was experiencing as a result of the new schedule rotation, and beginning June 17, 2007, Plaintiff no longer worked the afternoon shift, returning to the same schedule Plaintiff had worked when she arrived at the SIS office. *Id.* ¶¶ 60, 64-65. Plaintiff claims that on May 16, 2007, Labrado yelled at her and was unprofessional with her over the telephone. *Id.* ¶ 71.

According to Labrado, there was a training session regarding gangs that was to be held in El Paso, Texas, and he had been asked to provide a speaker for the conference. *Id.* ¶ 72. SIS technician Ruben Luna volunteered. *Id.* SIS technician Steven Nevarez later told Labrado he wanted to attend the conference. *Id.* ¶ 73. Albert Genera also expressed interest in attending the conference. *Id.* While the training authorization initially reflected that Labrado and Genera would attend, Labrado withdrew his name and sent Nevarez and Genera to attend the conference. *Id.* If Plaintiff or the other SIS technicians had expressed interest in attending the conference, Labrado would have considered them to attend. *Id.* ¶ 74. In making such a decision, Labrado would have had to consider both financial expense to the institution and maintaining coverage by an SIS technician at the institution. *Id.* ¶ 75. Labrado believed Plaintiff had previously attended a similar training. *Id.* ¶ 76.

Plaintiff claims that on May 17, 2007, Labrado told staff at a closed lieutenant's meeting that they should not trust or listen to the SIS technicians because they do not know what they are

talking about. *Id.* ¶ 78. Plaintiff claims Labrado was referring to her. *Id.* ¶ 79. On May 18,

2007, Plaintiff contacted an EEO counselor alleging she was discriminated against. On May 20,

2007, Plaintiff was pulled from the SIS office to help with the 9:00 p.m. official count at the

camp. *Id.* ¶ 82. Plaintiff claims she was subjected to harassing conduct by another lieutenant

when he called her at home saying she should be at work. *Id.* ¶ 93. Plaintiff also alleges that

correctional counselor Vicky Castanon made a demeaning and inappropriate comment. *Id.* ¶ 95.

According to Plaintiff, on June 10, 2007, Labrado told Plaintiff he did not want to have to watch

his back around her. *Id.* ¶ 102.

In a six month review, Plaintiff received a rating of satisfactory. *Id.* ¶ 105. In that same

review, all other SIS technicians received the same rating of satisfactory based in part on the

discrepancies identified in the staff assist. *Id.* ¶ 107. According to Plaintiff, on July 12, 2007,

she was informed that a gang task force meeting would be held at the FCI Training Center. *Id.* ¶

113. She alleges she was not informed by her supervisor and had been isolated from all

information. *Id.* ¶ 114.

On August 20, 2007, Plaintiff was temporarily reassigned from her position to religious

services. *Id.* ¶ 135. Warden Bragg made the decision to temporarily reassign Plaintiff to

religious services because he had received information about a possible breach of confidentiality

in the SIS unit. *Id.* ¶¶ 140-42. He felt strongly enough about the information that he transferred

Plaintiff and referred the information to the Office of Internal Affairs for investigation. *Id.* ¶ 142.

Warden Bragg was concerned because intelligence gathering, which is within the SIS

technician's job responsibilities, is essential for the safety and security of the institution. *Id.* ¶

144. On September 6, 2007, approximately two weeks after Plaintiff's reassignment, Maxine

Griego informed Plaintiff she was cleared and could return to the SIS office. *Id.* ¶ 165.

During the time that Plaintiff worked in religious services, her title as SIS technician did not change, she did not lose pay, and she did not lose any benefits. *Id.* ¶ 167. On April 3, 2009, an Administrative Judge found that Plaintiff was not discriminated against nor was she retaliated against. *Id.* ¶ 191. On October 6, 2009, Plaintiff filed her Complaint of discrimination, retaliation, and hostile work environment. Compl. ECF No. 1. On January 31, 2011, Defendant filed the instant Motion seeking to dismiss all three claims. Mot. 9-26.

### B. Discussion

#### 1. Standard governing motion to dismiss

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions").

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## 2. Standard governing motions for summary judgment

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations

to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Defendant's Motion is a motion to dismiss, or in the alternative, motion for summary judgment. Mot. 1. Because evidence outside the Complaint is necessary to dispose of the Motion, the Court addresses the Motion's alternative grounds for relief via summary judgment. *See* Fed. R. Civ. P. 12(d) ("if, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

### 3.      Exhaustion of remedies

Defendant argues that Plaintiff's claims occurring before April 3, 2007, are barred

because she failed to contact an EEO counselor in a timely fashion and thus failed to exhaust administrative remedies. Mot. 8-9. Plaintiff concedes that some of her claims are time barred, but disagrees about when Plaintiff contacted an EEO counselor. Pl.'s Resp. to Def.'s Mot. to Dismiss or in the Alternative, Mot. for Summ. J. ("Response") 8-9, ECF No. 27.

Before seeking relief for a Title VII violation, employees "must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). As part of the charge-filing process, an employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (2010). "Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative action (contacting an EEO counselor) are time barred in a subsequent action in federal court." *Pacheco*, 448 F.3d at 791 n.11 (citing 42 U.S.C. § 2000e-16 (2006)).

In this case, Plaintiff complains of conduct dating back to January 2007. Resp. 11-14. The parties dispute when Plaintiff made initial contact with an EEO counselor. Defendant claims Plaintiff contacted an EEO counselor on May 18, 2007, Mot. 8, while Plaintiff claims she contacted an EEO counselor on May 8, 2007. Resp. 8-9. However, Plaintiff offers no competent summary judgment evidence to support her assertion. Furthermore, Plaintiff herself admitted that she first contacted an EEO counselor on May 18, 2007. Mot. Ex. 2, at 80:14-81:16. While equitable tolling could be available to stay the limitations period, *see Miller v. Potter*, 359 F. App'x 535, 537 (5th Cir. 2010) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003)), Plaintiff has made no such argument in this case. As such, any events that took

place more than forty-five days before that date, or April 3, 2007, cannot properly be considered by this Court.  *See Pacheco*, 448 F.3d at 791 n.11.

### 4.    Hostile work environment

Plaintiff contends she was subjected to a hostile work environment based not on sexual harassment, but on gender discrimination.  Resp. 9-14.  Defendant counters that Plaintiff cannot state a prima facie case of hostile work environment because the conduct in question is not sufficiently severe or pervasive as to alter a term, condition, or privilege of employment, and because such conduct was not based on Plaintiff's protected status.  Mot. 10-17.

To make a prima facie showing of hostile work environment, a plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action.  *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)).  Where the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). The work environment must be "both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* In determining whether a hostile work environment exists, courts assess the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Merely offensive conduct, however, is not actionable. *Harris*, 510 U.S. at 21.

In this case, Plaintiff claims she was subjected to a hostile work environment based on twenty-six discrete events. Resp. 11-14. Excluding events for which Plaintiff has failed to exhaust administrative procedures, the Court summarizes these events into four categories: (1) unwarranted comments and rude behavior with no specific examples offered by Plaintiff; (2) temporary change of schedule, the three and one half week-period in which Plaintiff worked weekends and some evenings and added duty assignments when Plaintiff was asked to help with the official count; (3) Plaintiff's not attending a training conference; and (4) an investigation into Plaintiff's alleged breach of policy by releasing confidential information and her temporary transfer to the religious services unit. Because it is dispositive, the Court addresses the fourth factor required to establish a claim for hostile work environment, whether the harassment affected a term, condition, or privilege of employment.

The facts of this case, in their totality, are not sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment. The incidents Plaintiff alleges are not frequent, nor do they approach severe as Fifth Circuit case law defines the term. In addition, the complained of conduct is not physically threatening or humiliating. Finally, there is no evidence

12

that the conduct at issue unreasonably interfered with Plaintiff's work performance.

Rude behavior and unwarranted comments, especially when alleged in a conclusory fashion, do not alter a term, condition, or privilege of employment. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 394 (5th Cir. 2007) (finding offhand comments alleged in non-specific, conclusory fashion not to affect a term, condition, or privilege of employment); *Hayatdavoudi v. Univ. of La. Sys. Bd. of Trs.*, 240 F.3d 1073, at *6-7 (5th Cir. 2000) (table decision) (conduct insufficiently severe or pervasive where the plaintiff was called a "dog in the desert," the plaintiff and alleged perpetrator engaged in "chest butting," the plaintiff was called an idiot, and the plaintiff was accused of theft).

Similarly, temporary changes to schedule and duty assignments are not sufficiently severe or pervasive as to constitute a hostile work environment. *Ellis v. Principi*, 246 F. App'x 867, 871-72 (5th Cir. 2007) (no hostile work environment where supervisor gave plaintiff less favorable work assignments, denied her performance award, required her to use leave time to compensate for arriving late to work); *McConathy v. Dr. Pepper/Seven-Up Corp.*, 131 F.3d 558, 563-64 (5th Cir. 1998) (no hostile work environment where the plaintiff's supervisor was (1) unsupportive toward the plaintiff when she needed several surgeries; (2) became angry and said she had "better get well this time" when the plaintiff explained her need for additional surgery; (3) told the plaintiff he would no longer tolerate her health problems; (4) complained about plaintiff's extensive use of the company's benefits; (5) pressured plaintiff to return to work before she recovered; (6) told plaintiff's co-workers to cease communicating with the plaintiff; (7) transferred assignments away from plaintiff; and (8) refused to acknowledge plaintiff's presence).

Next, although there is no evidence to suggest Plaintiff made her desire to attend the training conference known to Labrado, an individual's being denied the opportunity to attend a training conference is not severe enough to constitute a hostile work environment. *See Hill v. Emory Univ.*, 346 F. App'x 390, 395-96 (11th Cir. 2009) (no hostile work environment where plaintiff was denied the opportunity to attend educational conference). Finally, an investigation and transfer of an individual to a different unit does not alter the terms, conditions, or privileges of employment. *See McGarry*, 355 F. App'x at 858 (internal investigation and transfer of the plaintiff are not sufficiently severe to alter a term, condition, or privilege of employment).

Even if at least some of the complained of conduct were sufficiently severe or pervasive, Plaintiff has offered no evidence showing that any of the complained of conduct was based on her gender. On the contrary, Defendant has offered evidence that the temporary change in schedule was to address deficiencies, Def.'s Proposed Undisputed Facts ¶ 45, that Labrado was unaware of Plaintiff's desire to attend the training conference and that he believed she had already attended a similar training, *id.* ¶¶ 74-76, and that Plaintiff was investigated and reassigned to religious services because of an allegation that she had disclosed confidential information. *Id.* ¶¶ 140-42. Because Plaintiff cannot make a prima facie case of hostile work environment, the Court grants summary judgment with respect to that claim.

### 5. Discrimination

Defendant contends that Plaintiff cannot make out a prima facie case of discrimination because she was not subjected to an adverse employment action and cannot show that she was treated less favorably than other similarly situated employees outside the protected group. Mot. 18-22. The Court agrees.

Claims of discrimination based on circumstantial evidence are analyzed under the "three-step, burden-shifting analysis embodied in the 'modified *McDonnell Douglas* approach.'" *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). First, a plaintiff must establish a prima facie case of discrimination. *Jackson*, 619 F.3d at 466. Second, if a plaintiff establishes a prima facie case, a defendant must articulate a legitimate, non-discriminatory reason for the employment action at issue. *Id.* Third, assuming the defendant meets this burden, the plaintiff must show that the defendant's legitimate, non-discriminatory reasons were a pretext for discrimination. *Id.*

To make out a prima facie case of discrimination, a plaintiff must show that he or she:

(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citation omitted)).

"[F]or all Title VII claims, [a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (quotation omitted).

Once again, Plaintiff alleges discrimination based on twenty-six discrete events. Resp. 15-19. As was the case with Plaintiff's claim for hostile work environment, these events can be properly summarized into the same four categories: (1) unwarranted comments and rude behavior with no specific examples offered by Plaintiff; (2) temporary change of schedule, the three and one half week-period in which Plaintiff worked weekends and some evenings, and added duty

assignments when Plaintiff was asked to help with the official count; (3) Plaintiff's not attending

a training conference; and (4) an investigation into Plaintiff's alleged breach of policy by

releasing confidential information and her temporary transfer to the religious services unit.

Because it is dispositive, the Court addresses the third factor required to establish a claim for

discrimination, whether Plaintiff suffered an adverse employment action.

Plaintiff does not allege that she suffered an ultimate employment decision such as

"hiring, granting leave, discharging, promoting, or compensating" based on discrimination. *See*

*McCoy*, 492 F.3d at 559 (quotation omitted). Rather, she asserts four categories of events.

Accordingly, the Court addresses each in turn. First, unwarranted comments and rude behavior

are not adverse employment actions. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*,

139 F.3d 532, 540 (5th Cir. 1998) (rude treatment by employer is not an adverse employment

action); *McConathy*, 131 F.3d at 563-64 (insensitive and rude behavior, along with "cold-

shouldering," do not rise to the level of an adverse employment action).

Second, temporary changes in schedule and added duty assignments similarly do not rise

to the level of adverse employment actions. *See Watts*, 170 F.3d at 512 (a change in schedule

and assignment to new tasks are not adverse employment actions); *Benningfield v. City of*

*Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (merely changing an employee's working hours,

without more, does not constitute an adverse employment action). Next, denial of an

individual's request[1] to attend a training conference is not an ultimate employment decision, and

---

[1] There is no evidence that Plaintiff actually requested to attend the training
conference. Rather, the evidence suggests that Labrado was unaware Plaintiff
wished to attend the conference. *See* Def.'s Proposed Undisputed Facts ¶¶ 74-
76.

thus, is not an adverse employment action. *See Veal v. Schlumberger Tech. Corp.*, No. Civ. A. H-04-3550, 2006 WL 237006, at *9 (S.D. Tex. Jan. 31, 2006) (an employer's alleged failure to train is not an adverse employment action) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999); *Dollis v. Rubin*, 77 F.3d 777, 779, 782 (5th Cir. 1995), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67 (2006)).

Lastly, an investigation into and transfer of an individual to a different unit are not adverse employment actions sufficient to set forth a prima facie case of discrimination. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) ("in cases where the evidence . . . solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action") (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)). The facts in *Pegram* are more serious than the facts in the case at bar, since in this case Plaintiff's transfer was temporary, and she maintained her job title, benefits, and salary both before and after the transfer. *See* Def.'s Proposed Facts ¶ 167. Just as the facts in *Pegram* did not constitute an adverse employment action, *Pegram*, 361 F.3d at 283, the facts in this case do not constitute an adverse employment action either.

Plaintiff cannot show that she has suffered an adverse employment action. She has also failed to offer any evidence that other, similarly situated individuals outside her protected group received more favorable treatment than she did. Because Plaintiff has failed to make a prima facie case of discrimination, the Court grants summary judgment with respect to her discrimination claim.

17

### 6. Retaliation

Defendant argues that Plaintiff cannot make a claim for retaliation because she cannot show that she has suffered an adverse employment action or that there is a causal connection between participation in a protected activity and the adverse action. Mot. 22-25. The Court agrees.

The *McDonnell Douglas* burden shifting framework also applies to retaliation cases. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). If a plaintiff sets out a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action. *Aryain*, 534 F.3d at 484 (citing *McCoy*, 492 F.3d at 557). If the employer meets this burden of production, then the plaintiff bears the burden of showing that the employer's reason is a pretext for the actual retaliatory reason. *Id.*

To make a prima facie case of retaliation, a plaintiff must show: (1) that he or she participated in a protected activity; (2) that his or her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. *Id.* (citing *McCoy*, 492 F.3d at 557). An adverse employment action in the retaliation context is one that "a reasonable employee would have found . . . [to be] materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Love v. Motiva Enters. LLC*, 349 F. App'x 900, 904 (5th Cir. 2009).

The adverse employment action must be materially adverse because "it is important to separate significant from trivial harms." *White*, 548 U.S. at 68. The anti-retaliation provisions do "not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v.*

*Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). The purpose of the objective standard is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *White*, 548 U.S. at 68). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 548 U.S. at 68.

In this case, Plaintiff alleges retaliation based on eighteen discrete events. Resp. 21-24. As is true with Plaintiff's hostile work environment and discrimination claims, these events can be properly summarized into the same four categories: (1) unwarranted comments and rude behavior with no specific examples offered by Plaintiff; (2) temporary change of schedule, the three and one half week-period in which Plaintiff worked weekends and some evenings and added duty assignments when Plaintiff was asked to help with the official count; (3) Plaintiff's not attending a training conference; and (4) an investigation into Plaintiff's alleged breach of policy by releasing confidential information and her temporary transfer to the religious services unit. Because it is dispositive, the Court addresses the second factor required to establish a claim for retaliation, whether Plaintiff suffered an adverse employment action.

Unwarranted comments and rude behavior do not constitute adverse employment actions. *See Browning v. Sw. Research Inst.*, 288 F. App'x 170, 179 (5th Cir. 2008) (finding no adverse employment action where employer allegedly called employee crazy and threatened her employment); *King v. Louisiana*, 294 F. App'x 77, 85-86 (5th Cir. 2008) ("[e]ven taken in a light most favorable to [plaintiff], allegations of unpleasant work meetings, verbal reprimands,

improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation") (citing *White*, 548 U.S. at 68). Although a change in schedule may constitute an adverse employment action, *see White*, 548 U.S. at 69, Plaintiff's schedule change was for a mere three and one half weeks, at which time Plaintiff's original work schedule was restored at Plaintiff's request. The Court does not find that a temporary, three and one half week schedule change that was undisputably implemented for the sound reasons set out above would dissuade a reasonable worker from making a charge of discrimination, and thus does not constitute an adverse employment action. *See id.* at 68. Furthermore, Defendant has offered a legitimate, non-retaliatory explanation for the schedule change, to provide coverage of the institution on nights and weekends so as to remedy the thirty-one deficiencies identified by the staff assist. Def.'s Proposed Undisputed Facts ¶ 45. Plaintiff has not offered any evidence to show that this explanation is a pretext for retaliation.

Moreover, additional duty assignments are not adverse employment actions. *See Peace v. Harvey*, 207 F. App'x 366, 368-69 (5th Cir. 2006) (added duty assignments did not constitute adverse employment actions). Plaintiff's not being asked to attend the training conference also is not an adverse employment action. *Dollis*, 77 F.3d at 779, 782 (holding an employer's refusal to allow an employee to attend a training conference is not an adverse employment action); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 929 (8th Cir. 2007) (failure to provide training, orientation, and access to employment tools are not adverse employment actions). Finally, a plaintiff suffers no adverse employment action where an employer conducts an investigation and transfers the plaintiff to a different unit. *See Magiera v. City of Dallas*, 389 F. App'x 433, 437 (5th Cir. 2010) (no adverse employment action where internal affairs investigated complaints lodged against

plaintiff with heightened scrutiny); *Sabzevari v. Reliable Life Ins.*, 264 F. App'x 392, 396 (5th Cir. 2008) (a transfer that does not involve a demotion in form or substance cannot rise to the level of materially adverse employment action). Plaintiff's transfer was temporary, and she maintained her job title, benefits, and salary both before and after the transfer. *See* Def.'s Proposed Facts ¶ 167. She did not suffer an adverse employment action.

The Court finds that Plaintiff cannot make a prima facie case for retaliation. Therefore, summary judgment is granted with respect to Plaintiff's claim for retaliation.

III.     **CONCLUSION**

For the foregoing reasons, Defendant's Objections, ECF No. 31, are **SUSTAINED** in part. Defendant's Motions to Strike, ECF Nos. 23, 33, are **OVERRULED AS MOOT**, and Defendant's Motion, ECF No. 21, is **GRANTED**.

The Clerk of Court shall close the case.

**SO ORDERED**.

**SIGNED** on this 20th day of April, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE